

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed February 17, 2009            United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CHAPTER 11 |
| RENAISSANCE HOSPITAL – GRAND PRAIRIE, | § | |
| INC., D/B/A RENAISSANCE HOSPITAL – | § | CASE NO.: 08-43775-DML |
| GRAND PRAIRIE, ET AL., | § | |
| | § | (JOINTLY ADMINISTERED) |
| DEBTORS. | § | |
| | § | |
| FIRST NATIONAL BANK, | § | |
| | § | ADVERSARY NO.: 08-04155-DML |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| STATE OF TEXAS – WORKFORCE | § | |
| COMMISSION, RENAISSANCE HOSPITAL | § | |
| TERRELL, INC., HOUSTON COMMUNITY | § | |
| HOSPITAL, INC. D/B/A RENAISSANCE | § | |
| HOSPITAL – HOUSTON, AND RENAISSANCE | § | |
| HEALTHCARE SYSTEMS, INC., | § | |
| | § | |
| DEFENDANTS. | | |

**MEMORANDUM OPINION**
[Related to Dkt No. 11]

Before the court is *Texas Workforce Commission's Motion to Dismiss First National Bank's Complaint for Lack of Jurisdiction* (the "Motion") filed by defendant Texas Workforce Commission ("TWC"). In response to the Motion the *First National Bank's Objection to Texas Workforce Commission's Motion to Dismiss for Lack of Jurisdiction* (the "Objection") was filed by plaintiff First National Bank ("FNB" or "Plaintiff"). The court held a hearing on the Motion on December 12, 2008 (the "Hearing"). At the Hearing counsel for Debtors,[1] counsel for Plaintiff, and counsel for TWC were present and argued to the court.

The court exercises jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This memorandum opinion embodies the court's findings and conclusions. Fed. R. Bankr. P. 7052.

## I. BACKGROUND

**A. Debtors**

Prior to (and since) filing their voluntary chapter 11 petitions on August 21, 2008 and August 26, 2008 (together, the "Petition Dates") Debtors operated hospital facilities at various locations around the State of Texas. Currently, Debtors (with the exception of Terrell, which is the subject of a confirmed plan) are operating their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. An official unsecured creditors' committee has been duly appointed as well as a patient care ombudsman in this case.

---

[1] Although they are only indirectly implicated in the actual dispute, Debtors are named defendants in this adversary proceeding. The term Debtors includes Renaissance Hospital – Grand Prairie, Inc., d/b/a Renaissance Hospital –Grand Prairie, Renaissance Hospital Dallas, Inc., Houston Community Hospital, Inc., d/b/a Renaissance Hospital – Houston, Renaissance Hospitals, Inc., d/b/a Renaissance Hospital – Groves, Renaissance Healthcare Systems, Inc., and Renaissance Hospital Terrell, Inc., d/b/a Renaissance Hospital – Terrell ("Terrell").

**B. Plaintiff and TWC**

It does not appear to be contested by any party that prior to the Petition Dates and at all relevant times the relevant Debtors maintained bank accounts with FNB. The underlying dispute in this adversary originated when TWC served *Notices of Freeze* and *Notices of Levy* (together with the Notices of Freeze, the "<u>Notices</u>") on Plaintiff in order that TWC could collect on unpaid unemployment taxes to the State of Texas alleged to be owed by Debtors.

There are three Notices of Freeze at issue in the case at bar. The pleadings do not agree on the exact date the Notices of Freeze were served on Plaintiff, but Plaintiff and TWC agree that all were served in early August 2008, prior to the Petition Dates. The Notices of Freeze operated to stop any transfers of money from the specific account shown on each Notice of Freeze.

Likewise, there are three corresponding Notices of Levy at issue in this case. Again, the parties do not agree as to the exact date the Notices of Levy were served upon Plaintiff but for the purposes of this memorandum opinion it appears likely that service was in early August 2008, prior to the Petition Dates. The Notices of Levy operated to levy any money held by Plaintiff in an account in the name of the specified Debtor.

At some time after Plaintiff received the Notices Plaintiff transferred the money held in the various accounts named in the Notices to Debtors, presumably at Debtors' request. TWC claims that such transfer was in violation of the Texas Labor Code and because of this TWC may assert a cause of action for this violation against Plaintiff in state court. Plaintiff, relying on the apparent plain meaning of the applicable statute, responds that no violation of the Texas Labor Code has occurred because Plaintiff claims a higher priority interest in the assets subject to the Notices by reason of a prior perfected security interest.[2] Plaintiff also contends that because

---

[2] See Tex. Tax. Code § 113.101, which states:

TWC has transferred its right to payment evidenced by its proof of claim filed against Debtors (the "TWC Claim") such transfer has mooted the TWC's asserted causes of action against Plaintiff.[3]

## II. DISCUSSION

TWC's Motion seeks to dismiss this adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7012, for lack of jurisdiction.[4]

**A. Standard for Dismissal**

An objection to subject matter jurisdiction may properly be raised at any time either by a party or by the court *sue sponte*. *Carlisle v. United States*, 517 U.S. 416, 434 (1996). A court's consideration of a challenge to subject matter jurisdiction is not made on the merits and is without a preclusive effect. *Verret v. Elliot Equip. Corp.*, 734 F.2d 253, 238 (5th Cir. 1984). When subject matter jurisdiction is challenged the court may consider evidence and look beyond the pleadings. *Montez v. Dept. of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). If a court determines

---

Sec. 113.101. APPLICABILITY OF LIEN BEFORE FILING. (a) No lien created by this title is effective against a person listed in Subsection (b) of this section who acquires a lien, title, or other right or interest in property before the filing, recording, and indexing of the lien:
(1) on real property, in the county where the property is located; or
(2) on personal property, in the county where the taxpayer resided at the time the tax became due and payable or in the county where the taxpayer filed the report.
(b) This section applies to a bona fide purchaser, mortgagee, holder of a deed of trust, judgment creditor, or any other person who acquired the lien, title, or right or interest in the property for bona fide consideration.

Plaintiff has previously sought to assert this position when it filed its *Motion Requesting (1) Determination of the Parties' Rights with Respect to the TWC's Notices of Levy and Notices of Freeze , and (2) Leave to Interplead Funds into the Court Registry* (the "Motion for Leave"). The court denied the Motion for Leave as procedurally improper, without any determination on the merits. Commencement of this adversary proceeding followed.

[3] The TWC Claim is filed as claim no. 2 in case number 08-34143 on September 5, 2008.

[4] Except as otherwise specified, reference to the "Rules" or "Rule" means the Federal Rules of Bankruptcy Procedure.

that it lacks subject matter jurisdiction the court must dismiss the action. Rule 7012(h)(3). On the other hand, even where the bankruptcy court has jurisdiction over a proceeding, in some circumstance it ought not exercise that jurisdiction.

In bankruptcy cases, disputes between third party non-debtors are not core matters pursuant to 28 U.S.C. § 157(b)(2). Notwithstanding this, the court may consider "related to" actions between third party non-debtors under 28 U.S.C. § 1334(b) in some circumstances. See *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292 (5th Cir. 2007). Alternatively, the court may also choose to abstain from hearing such matters pursuant to 28 U.S.C. § 1334(c)(1).[5] Under the doctrine of permissive abstention, "courts have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *Gober v. Terra + Corp., (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996) (citations omitted), as cited in *Barbee v. Colonial Healthcare Ctr., Inc.*, 2004 U.S. Dist. LEXIS 4868 (N.D. Tex. Mar. 22, 2004). The decision to abstain or not to abstain is committed to the discretion of the trial court. See *Id*., citing *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 at fn. 6 (5th Cir. 1990).

A laundry list of factors has been used by courts in this circuit to determine whether or not to permissively abstain. However the court is not required to address each factor and, moreover, in the *Gober* case,[6] the bankruptcy court gave no rationale for abstention and was nevertheless affirmed. A recent case recognizes a five factor test and a 12 factor test that have

---

[5] To the court's knowledge no state court proceeding respecting the dispute addressed in this adversary proceeding has been initiated at any time. Thus mandatory abstention under section 1334(c)(2) is not appropriate.

[6] 100 F.3d at 1207.

been employed in determining whether abstention is appropriate.[7] The factors include; the absence of any basis for jurisdiction other than section 1334, the likelihood that the proceeding can be timely adjudicated in a state forum, the extent to which state law issues predominate, and the degree of relatedness the proceeding has to the bankruptcy case. See *Barbee* at \*2 citing *In re Republic Reader's Service, Inc.*, 81 B.R 422, 428 (Bankr.S.D.Tex. 1987).

**B. Analysis**

In this case the court believes that even if Plaintiff could overcome TWC's jurisdictional challenge, this court should abstain from hearing this matter for the reasons given below.[8] While Plaintiff has gone to great pains to paint this adversary as one which has a substantial impact on property of the estate (by way of the funds in the accounts)[9] and the liabilities against the estate (by way of Debtors being liable for any account deficiency),[10] the heart of the dispute is TWC's asserted causes of action based on Plaintiff alleged failure to comply with the Notices.

The basis of exercise of permissive abstention is the recognition that a non-core proceeding is simply better tried in a different forum. In this case, the causes of action and defenses which Plaintiff and TWC assert against one another arise solely under state law. Furthermore, the parties who are actively litigating are not debtors in this bankruptcy case and

---

[7] While this court has typically utilized the 12 part test (see, e.g., *Denton County Elec. Coop. v. Eldorado Ranch, Ltd. ( In re Denton County Elec. Coop.)*, 281 B.R. 876, 881 (Bankr.N.D. Tex. 2002)), here it need only address factors common to both tests.

[8] The "conceivable affect" test in the *Edge* case and others which must be met in order for the court to exercise jurisdiction would most likely not be met in this case. However the court need not reach the issue because the court has determined it would in any event abstain from considering the matter.

[9] In the Objection, Plaintiff states that, should this matter not be disposed of in this court, such result "…could conceivabl[y] affect a [sic] FNB's desire to participate in further short-term DIP financing and long-term exit financing of the Debtors [sic] operations." See Objection at p. 8 ¶ 20. The court does not see how the dispute between FNB and TWC could affect the economics of financing Debtors and questions whether so contrived an effect on Debtors' cases can serve as a basis for jurisdiction under section 1334(b).

[10] As asserted by the Plaintiff in the Objection at p. 8 ¶ 21.

are only involved in the case in capacities distinct from the claims and defenses they assert against one another in this proceeding. This court concludes that it is likely this matter can be quickly adjudicated in state court[11] and that state law clearly predominates, as there is no assertion that any cause of action or defense arises under the Bankruptcy Code or any other federal law. Given the lack of impact on Debtors' rehabilitation, the court does not consider this adversary proceeding an appropriate matter over which it should exercise its jurisdiction.

The assertion by Plaintiff that the assignment of the right of payment of the TWC Claim moots TWC's asserted causes of action against Plaintiff is unpersuasive. The TWC Claim asserts a claim for unpaid taxes. The TWC Claim states that "[t]he consideration of this debt (or liability) is tax due under the Texas Unemployment Compensation Act, Labor Code, Chapter 201 et seq." See TWC Claim at p. 1 ¶ 3. The TWC Claim does not assert a claim against Plaintiff, thus an assignment of the right of payment of the TWC Claim would not affect any causes of action TWC asserts against Plaintiff simply because the TWC Claim does not address those asserted causes of action.[12]

### III. CONCLUSION

For the reasons stated herein, the Motion will be granted and this adversary proceeding dismissed without prejudice to TWC or FNB filing proceedings in a proper state venue. This opinion obviously should not be construed as an adjudication of the merits of the claims asserted by either party. It is based only on the court's conclusion that, even if it has jurisdiction over this

---

[11] TWC may not even elect to pursue the matter in state court.

[12] The court understands the frustration of Plaintiff and Debtors: TWC stood silent during earlier hearings when Debtors advised the court that assignment of the TWC Claim would also moot this suit. The court trusts TWC's failure to speak at those times was due to its counsel's incorrect but innocent assumptions respecting her client's position.

adversary proceeding, the proceeding may be more properly conducted in another forum. The court will issue a separate order embodying this ruling.

### ### END OF MEMORANDUM OPINION ###